## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **CIGNA HEALTHCARE OF TENNESSEE INC., on behalf of itself and its affiliated entities,** | ) ) ) ) | |
| **Applicant,** | ) ) | |
| **v.** | ) ) | **Case Nos. 2:23-cv-2550-JTF-tmp** **2:23-cv-2500-JTF-tmp** |
| **BAPTIST MEMORIAL HEALTH CARE CORPORATION,** | ) ) ) | |
| **Respondent.** | ) ) ) | |

## ORDER DENYING MOTION TO REMAND; DENYING MOTION TO DISMISS; ADDRESSING ALL OUTSTANDING PROCEDURAL CHALLENGES

Before the Court are two motions and a litany of tagalong procedural issues raised in filings across the two dockets for this dispute. First is Respondent Baptist Memorial Health Care Corporation's ("Baptist") Motion to Remand, filed on September 26, 2023. (ECF No. 14.) Applicant Cigna Healthcare of Tennessee Inc. ("Cigna") filed its Response on November 6, 2023, and Baptist filed its Reply on November 14, 2023. (ECF Nos. 30 & 34.) Second is Cigna's Motion to Dismiss its initial petition to vacate, filed on September 8, 2023. (ECF No. 8.) Baptist filed its Response on October 6, 2023, and Cigna replied on November 6, 2023. (ECF Nos. 18 & 31.) For the reasons set forth below, Baptist's Motion to Remand and Cigna's Motion to Dismiss are **DENIED**; and the Court **DECLINES** to dismiss any part of either action based on the various procedural challenges that the parties have raised outside of these two motions.

## I.     BACKGROUND

This case and its consolidated counterpart, *CIGNA Healthcare of Tennessee, Inc. v. Baptist Memorial HealthCare Corporation*, Case No. 23-cv-2500-JTF-tmp, arise out of a yearslong arbitration that sprawls across thousands of pages and involves a substantial amount of money. The Court lays out the factual and procedural background in depth below.[1]

### A.  The Arbitration Agreement

Pursuant to federal and state law, all hospitals are required to provide emergency services to anyone in need, regardless of whether they are insured, or their insurance provider is in a contractual relationship with the hospital. (Case No. 23-cv-2500-JTF-tmp; ECF No. 46, 5 & 7 (sealed); hereinafter, ("ECF No. 46").) Baptist claims that Cigna wrongfully underpaid or denied altogether certain claims for out-of-network emergency services that several of its Memphis, Tennessee metro-area hospitals provided to Cigna members between 2013 and 2019. (*Id.* at 2.)

On November 26, 2019, Baptist and Cigna contractually agreed to arbitrate this dispute (the "Arbitration"). (*Id.*) The First Amended Arbitration Agreement ("Arbitration Agreement") dated February 24, 2020 is the controlling document. (*Id.*)  Under the Arbitration Agreement, the issue to be determined through the Arbitration was "whether Baptist was properly reimbursed for the Arbitration Claims, and if not, what is the amount Cigna owes." (ECF No. 7-2, 539.) The Arbitration Agreement empowered the Panel "to decide all claims and defenses asserted in the arbitration, as required by law and equity." (*Id.* at 541.)  The Arbitration Agreement also gave the Panel the authority to bifurcate the arbitration by agreement of the Parties or by order of the Panel upon motion to promote efficiencies and resolution of the Dispute. (*Id.)*

---

[1] All citations in this Order refer to the ECF docket entry numbers for Case Number 23-cv-2550 unless otherwise noted.

The Parties agreed that the Panel would apply federal law to federal substantive legal issues and state law to state substantive legal issues, and that the American Arbitration Association ("AAA") Commercial Rules would govern procedural and process-related issues. (*Id.* at 539.) The agreement also indicated that the Panel's awards would be valid and binding upon the Parties, and that any challenge to such awards may commence within 90 days of the award subject to and enforced in accordance with the Federal Arbitration Act ("FAA"). (*Id.* at 542.)

Cigna now challenges portions of the arbitration addressing the appropriate reimbursement it owes for out-of-network health care services performed at Baptist's hospitals. (ECF No. 14, 7.)

**B. Arbitration Proceedings**

Baptist asserted four causes of action in the arbitration: (1) a derivative claim for ERISA wrongful denial of benefits; (2) a derivative claim for breach of contract for non-ERISA claims; (3) a direct claim for *quantum meruit*; and (4) a claim for violation of the Tennessee Prompt Pay Act. (ECF No. 14, 8.) The Arbitration was bifurcated into multiple phases, purportedly to address the complexities of the dispute more efficiently. (*Id.*) Following discovery, the Phase 1 hearing was held in February and March of 2021 and focused on underpaid claims from the "Top 16" Accounts and Counts I (breach of contract for non-ERISA plans) and IV (wrongful denial of benefits under ERISA). (ECF No. 46, 2.) Following this hearing, the Panel issued its "Phase 1 Tentative Rulings" which were subject to reconsideration at the conclusion of Phase 2. (*Id.* at 3 & ECF No. 13-3, 3.)

On November 2, 2021, the Panel entered "Order No. 13 – Case Management for Phase 2 Hearing" ("Phase 2 CMO") in which it exercised its authority to further bifurcate the arbitration based on its findings in Phase 1. (ECF No. 46, 3.) The Phase 2 CMO also stated that "the Phase 2 Hearing shall result in final rulings on all claims and defenses that have been addressed to date."

(*Id.*) The Arbitration then entered Phase 2, which culminated in a nine-day evidentiary hearing in November and December of 2021. (*Id.* at 4.) The Panel issued its Phase 2 "Partial Final Award" on September 7, 2022. (Case No. 23-cv-2500-JTF-tmp; ECF No. 47, 3 (sealed); hereinafter, ("ECF No. 47").) The Phase 2 Award resolved all issues between the Parties related to liability for the claims at issue in Phases 1 and 2, including Baptist's derivative causes of action on behalf of Cigna members, and its *quantum meruit* cause of action, which it brought directly against Cigna. (ECF No. 46, 91.) The Panel found in Cigna's favor on Baptist's derivative causes of action. (*Id.*) They also determined that under Tennessee law, *quantum meruit* applied to the out-of-network emergency services at issue, that such relief was not preempted by ERISA, and that Cigna was liable under Baptist's *quantum meruit* cause of action. (*Id.* at 86, 91.) However, the Panel left the determination of the reasonable value of the services provided and any additional issues for a future hearing. (*Id.* at 91.)

On July 11, 2023, the Panel entered its "Partial Final Award for Phase 3(a)." (ECF No. 47, 2.) The purpose of Phase 3(a) was to determine the "reasonable value" of the out-of-network emergency services Baptist was required by law to provide. (*Id.* at 3.) Additionally, this hearing was to address the correct reference point "for any award to Baptist, namely whether it should be expressed as a percentage of Baptist's billed charges or rather a multiple of what Medicare would pay, and various issues relating to whether Baptist's costs and profits should be considered in assessing reasonable value." (*Id.*) The Panel ultimately determined that the value corresponding to 78.5% of Baptist's billed charges represented the reasonable value of the out-of-network emergency services. (*Id.* at 17.) The Panel indicated that there would be a Phase 3(b) hearing in which they would consider whether their *quantum meruit* ruling would extend to "emergency inpatient" claims. (*Id.* at 18.)

### C.  Procedural History

On December 6, 2022, Cigna filed a "short form" petition in state court, challenging the Panel's Phase 2 Partial Final Award. (ECF No. 7.) This filing came one day before Cigna's three-month window for challenging a final award closed under the FAA (if the challenge window commenced). On June 13, 2023, Cigna filed a more detailed petition after the Parties negotiated about appropriate redactions to that award. (*Id.*) Baptist filed a Counter-Petition to Confirm the Arbitration Awards in state court on August 18, 2023. (ECF No. 7-2, 527.)

Cigna indicates that it commenced the state action as a "precautionary step" because of the words "partial" and "final" in the Phase 2 award title. (ECF No. 7, 9-10.) They were concerned that the use of the word "final" meant that the FAA's 90-day timeline to challenge the Award would begin to run. (*Id.* at 9.) Cigna requested clarification from the Panel on this issue, but did not receive any. (*Id.*) They believed that they lacked Article III standing to challenge the Partial Final Award in federal court because the Panel only found that that a *quantum merit* remedy would be proper, and so did not decide as to whether Cigna's prior payments to Baptist were unreasonable. (*Id.*) As Cigna understands it, the Phase 3 Partial Final Award dated July 11, 2023 which expressly incorporated its prior decision and determined that Baptist would be able to recover additional funds from Cigna did create an injury sufficient to confer Article III standing. (*Id.* at 12.) Cigna then removed the initial action to this court within 30 days of Baptist naming them as a defendant/respondent to their counter-petition to confirm the arbitration awards. (*Id.* at 17.)

On August 14, 2023, Cigna filed a nearly identical petition to challenge the Phase 2 Partial Final Award in this Court, which is docketed as Case No. 23-cv-2500. Cigna then removed its state court case to this Court on August 31, 2023. (ECF No. 1.) Cigna filed an unopposed Motion

to Consolidate the two cases on the 23-cv-2500 docket on September 8, 2023, which the Court granted on October 16, 2023. (ECF Nos. 15 & 22.)

Cigna moved to dismiss the initial case that they brought in state court and removed to this Court on September 8, 2023. (ECF No. 8.) This filing doubles as an opposition to Baptist's counter-petition. (*Id.* at 2.) Baptist filed a response on October 6, 2023, to which Cigna replied on November 6, 2023. (ECF Nos. 18 & 31.)

On September 26, 2023, Baptist filed a motion to remand and accompanying memorandum of law. (ECF Nos. 13 & 14.) Cigna responded on November 6, 2023, and Baptist replied to that response on November 14, 2023. (ECF Nos. 30 & 34.)

## II.    LEGAL STANDARD

Pursuant to 28 § U.S.C. 1447(c), a motion to remand based on a non-jurisdictional defect must be brought within 30 days of removal, whereas a subject matter jurisdiction challenge may be brought at any time. 28 U.S.C. § 1447(c).

Under § 1441(a), "[a] civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Whether a claim "arises under" federal law is determined in consideration of the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). "Under this rule, a federal question must appear on the face of the complaint rather than as part of a defense, even if a federal-law defense is anticipated." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012).

## III.    ANALYSIS

The central dispute between the parties is whether the arbitration award(s) should be confirmed or vacated. Before the Court may turn to that dispute, it must address several procedural

issues raised by the parties: whether the Court has subject matter jurisdiction, whether certain challenges are time-barred, and whether the case should be remanded for other procedural defects.

### A.  Subject Matter Jurisdiction

The parties dispute whether the Court has subject matter jurisdiction over the claims asserted in this action. "The district courts of the United States are courts of limited jurisdiction, defined (within constitutional bounds) by federal statute." *Badgerow v. Walters*, 596 U.S. 1, 7 (2022) (citations omitted). Pursuant to 28 U.S.C. § 1331, federal district courts are authorized to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[2]

The FAA authorizes parties to file petitions to compel arbitration and to confirm, vacate, or modify arbitral awards, but it "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis" over the petitions. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008). Jurisdiction to entertain petitions to confirm or vacate arbitral awards under FAA Sections 9 or 10 must be grounded "on the face of the FAA application itself," as opposed to the underlying substantive controversy. *Badgerow v. Walters*, 596 U.S. 1, 15 (2022). An action arises under federal law if that law "creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

### i.    Original Jurisdiction

Cigna contends that their application to vacate the two arbitration awards presents a federal question on its face because (1) the key assertion therein is that § 514(a) of ERISA preempts the *quantum meruit* remedy that the panel issued in the Phase 2 Partial Final Award;[3] (2) the Court is

---

[2] The parties agree that federal jurisdiction via diversity of citizenship is unavailable here.

[3] "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" unless they are exempt." 29 U.S.C. § 1144(a).

empowered to enjoin this violation or provide other appropriate equitable relief under §§ 502(a)(3)[4] and 502(e)(1)[5] of the Act; and (3) § 502(a) alone supplies independent subject matter jurisdiction over this action. (ECF No. 13-1, 29-31.) In support of these arguments, Cigna relies upon *Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, a Southern District of New York case holding that subject matter jurisdiction existed over a petition to confirm an arbitration award because the arbitral award was rendered pursuant to an ERISA-governed contractual obligation. No. 21-CV-8330 (LAK), 2022 WL 2209349, at *6 (S.D.N.Y. June 20, 2022), *aff'd*, 102 F.4th 572 (2d Cir. 2024).[6]

Baptist believes that the Court lacks subject matter jurisdiction because Cigna's proposed jurisdictional bases require that the Court "look through" to the underlying substantive controversy, something that the Supreme Court explicitly forbade in *Badgerow*. (ECF No. 21, 19-20.) They argue that the face of the application presents a purely contractual issue that is governed by state law because Cigna only challenges the awards under 9 U.S.C. § 10(a)(4), which permits vacatur where the arbitrators exceeded their powers. (*Id.* at 18.) They contend that *Trustees of New York State Nurses Association Pension Plan* does not support Cigna's position based on several factual differences. (*Id.* at 21.)[7]

---

[4] A civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).

[5] "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title." 29 U.S.C. § 1132(e)(1).

[6] Cigna makes passing mention of The All Writs Act, 28 U.S.C. § 1651. (ECF No. 13-1, 18.) It is not entirely clear how this bears on the Court's subject matter jurisdiction as Baptist points out that the Act does no confer jurisdiction. (ECF No. 21, 23.)

[7] The parties also spar over the relevance of two Supreme Court cases, *Verizon Md., Inc. v. Pub. Serv.*, 535 U.S. 635 (2002), and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). The Court does not find it necessary to delve into this dispute to determine whether it has subject matter jurisdiction over this case.

The Sixth Circuit's *Badgerow* analysis in *Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council 91*, 43 F.4th 628, 630-31 (6th Cir. 2022) is instructive. In that case, an employer moved to vacate an arbitration award in favor of a union under Section 10 of the FAA. *Id.* Consistent with *Badgerow*, the Sixth Circuit considered whether there existed an independent basis for subject matter jurisdiction. *Id.* at 630. The Court found that the Labor Management Relations Act (LMRA) could supply an independent basis for jurisdiction because the Act confers jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization ...." *Id.* at 631 (quoting 29 U.S.C. § 185(a)). Because the arbitrator's award was a "contractual resolution of the parties' dispute," a violation of the arbitrator's award constituted a violation of the LMRA. *Id.*

Here, Cigna alleges on the face of their petition that the panel acted with manifest disregard of the law when it decided that ERISA preemption (29 U.S.C. § 1144(a)) does not preempt *quantum meruit* remedies. (ECF No. 13-1, 19-20.) Pursuant to 29 U.S.C. § 1132(a)(3), a participant, beneficiary, or fiduciary may bring suit to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief. Taken together, Cigna's manifest disregard of the law challenge states a federal claim arising under 29 U.S.C. § 1132(a)(3).[8] Thus, the Court has subject matter jurisdiction over this claim.[9]

### ii.   Supplemental Jurisdiction

Cigna asserts that the Court may exercise supplemental jurisdiction over the remaining claims arising under Tennessee state law. (ECF No. 13-1, 18.) Under 28 U.S.C. § 1367(a), a court

---

[8] *See also Caterpillar Inc. v. Williams*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). Thus, a state-law claim that is completely preempted may be removed from state court to federal court pursuant to §1441(a).

[9] Baptist's arguments to the contrary relate to the merits of the challenge and the appropriateness of the vacatur standard. The Court will address these matters when it rules on the merits of Cigna's claims.

with subject matter jurisdiction over at least one claim asserted in an action may exercise supplemental jurisdiction over the remaining claims that form part of the same case or controversy under Article III. 28 U.S.C. § 1367(a). Baptist does not challenge the propriety of exercising supplemental jurisdiction over the state law claims. Because none of the bases for declining to exercise supplemental jurisdiction set forth in 28 U.S.C. § 1367(c) are applicable, the Court exercises supplemental jurisdiction over the remaining claims.

### B.  Finality of Arbitration Awards and Article III Standing

The "finality" of the two partial final awards, and its consequences for both the FAA post-arbitral challenge timelines and Article III standing is an issue that the parties raise at multiple points throughout their filings. Cigna claims that their uncertainty as to the finality of the award resulted in the current confusion because they were unsure if the Phase 2 Partial Final Award commenced the FAA's three-month post-arbitral award challenge window. (ECF No. 30, 23-24.) Cigna also says that it lacked standing to challenge the Phase 2 Partial Final Award in federal court because the Panel's decision handled only liability and reserved ruling on damages for a subsequent phase. (*Id.* at 19.) Notably, Baptist claims that Cigna had Article III standing to challenge the Phase 2 Partial Final Award based on the imposition of "contingent liability" and the requirement that it continue to incur legal fees by proceeding to the next phase of the arbitration. (ECF No. 14 14-15.) Further, they argue that the Phase 2 Partial Final Award was final for the purposes of commencing the FAA's three-month challenge window because: (1) the Arbitration Agreement expressly provides that issues to be decided at the final hearing may be bifurcated "in order to promote efficiencies and resolution of the Dispute" by agreement of the parties or by order of the panel upon motion; (2) the Panel bifurcated the proceedings into liability (Phase 2) and damages (Phase 3) based on this agreement; and (3) that such bifurcation resulted

in the issuance of the "Phase 2 Partial Final Award" which fully determined all outstanding questions of liability.  (ECF Nos. 7-2, 528 & 14, 16-17.)

The significance of these issues is twofold. First, Baptist believes that its interpretation of the finality of the award and its consequences means that Cigna's only opportunity to challenge the Phase 2 Partial Final Award's conclusions was by court challenge to that specific order within three-months of its entry. (*See* Case No. 23-2500, ECF No. 21, 26.) Second, this would mean that Cigna's only means of challenging the Phase 2 Partial Final Award was through the cause of action that Baptist argues must be remanded, not from the vacatur action that was originally filed in this Court. Because the Court ultimately concludes that the FAA's deadline to challenge an arbitral award did not commence upon issuance of the Phase 2 Partial Final Award, it declines to address whether Cigna had Article III standing at the time of the Phase 2 Partial Final Award's issuance because the issue is moot.[10]

The Court turns first to Baptist's contention that the Phase 2 Partial Final Award was final pursuant to 9 U.S.C. § 10(a)(4). The specific argument advanced here is that the default rule—that arbitration awards must address all issues submitted to the panel to be considered final for the purposes of judicial review and the commencement of the FAA's three-month window to challenge the award—can be bypassed via the parties' express agreement to bifurcate the arbitration, and the Panel's issuance of an award resolving all issues pertaining to liability.

Three circuits have held that a partial award may be considered final based on the parties' express agreement. In the most closely analogous case, the First Circuit held that the FAA permits a district court to confirm or vacate a partial award where the parties entered into a formal agreement to bifurcate at the arbitration stage. *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d

---

[10] The parties do not dispute that Cigna has Article III standing at this point, and there appears to be no reason to doubt that conclusion. The Court therefore declines to address the matter.

231, 236 (1st Cir. 2001). The First Circuit emphasized the importance of the "definiteness with which the parties have expressed an intent" to divide an arbitration into distinct phases. *Id.* at 235. Relatedly, the Second Circuit held that under the rule of *functus officio*, an arbitration panel lacked the authority to reconsider an issue decided in a "partial final award" where the parties asked them to issue an immediate decision on liability, reserving the damages question for a later date, and neither party made a timely objection to the panel's characterization of that interim award as being final. *See Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) *accord Verizon Pennsylvania, LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000*, 13 F.4th 300, 309 (3d Cir. 2021). The Court will refer to this as the "finality by express agreement" exception.[11]

Consistent with the authorities described above, Baptist's contention that Cigna's challenge is time-barred under the FAA requires the Court to make three determinations: (1) that existing Sixth Circuit precedent is coextensive with, or should be extended to cover, the finality by express agreement exception; (2) that Cigna and Baptist expressly agreed to bifurcate the arbitration, and the parties and panel understood this to mean that the Phase 2 Partial Final Award would be "final"; and (3) that the application of the finality by express agreement exception means that the FAA challenge timeline commenced upon the partial final award's issuance.

i.      **Exceptions to the Finality Rule**

Although the Sixth Circuit has recognized exceptions to the finality rule, it has not explicitly adopted the finality by express agreement exception. *See, e.g., Island Creek Coal Sales*

---

[11] The Court considers this exception to be different from that which the Seventh Circuit has adopted, where a partial award will be considered final even if the parties did not expressly agree so long as they agreed to bifurcate, and the circumstances are clear that the parties and arbitrators intended for the award to be final. *See Publicis Commc'n v. True N. Commc'ns Inc.*, 206 F.3d 725, 729 (7th Cir. 2000).

*Co. v. City of Gainesville, Fla.* 729 F.2d 1046, 1049 (6th Cir.1984) (holding that an "interim award" that finally and definitively disposed of a separate, discrete, self-contained issue may be confirmed "notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration" (internal quotation marks omitted)), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000). More recently, the Sixth Circuit held that district courts may entertain interlocutory review of arbitration decisions if interlocutory review was expressly provided for in the underlying arbitration agreement and Article III requirements are satisfied. *See Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 720 (6th Cir. 2014) (citing *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010).

With respect to the first determination, the Court finds that *Nat'l Union Fire Ins. Co. of Pittsburg, PA*'s holding that courts must enforce contractual provisions calling for interlocutory judicial review of interim arbitration decisions can be reasonably interpreted to cover the arbitration by express agreement exception. That case reiterates that arbitration is a creature of contract, and courts will enforce the underlying contract according to its terms, so long as Article III requirements are met. Under this reading, if the parties expressly agreed to bifurcate the arbitration and to empower the arbitration panel to issue phased final decisions subject to judicial review, then the Court must respect that agreement.

### ii.    Interpreting the Arbitration Agreement's Provisions on Bifurcation

As for the second issue, it is unclear that the parties can be fairly said to have agreed that the Phase 2 Partial Final Award would be "final." Although the parties and panel understood that the Phase 2 Partial Final Award would be final in some sense, it appears that the parties did not agree on what that term meant. Cigna interpreted finality to mean that the panel could not reconsider the partial final award's rulings, and that those rulings would impact future phases of

the arbitration. (ECF No. 14, 10.) Baptist believes the "finality" of the partial final award also meant that the FAA's three-month limitation period for challenging the award timeline commenced on the date of the partial final award's issuance, rather than on the date of the final award's issuance, when all outstanding issues submitted to the Panel are resolved. Under Sixth Circuit precedent, Cigna and Baptist's disagreement as to the meaning and legal effect of the term "final" in the Phase 2 Partial Final Award's title must be resolved by reference to the underlying contract, here the Arbitration Agreement. *See Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d at 720.

"The common thread in all Tennessee contract cases—the cardinal rule upon which all other rules hinge—is that courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019). (citations omitted). "Also foundational to our jurisprudence is the principle that the rules used for contract interpretation have for their sole object to do justice between the parties, by enforcing a performance of their agreement according to the sense in which they mutually understood it at the time it was made." *Id.* (quotations and citations omitted.) "If the contract and its terms are clear, courts do not have to look any further than the contract itself." *Massachusetts Mut. Life Ins. Co. v. RCS - Germantown I, LLC*, No. 219CV02198SHLCGC, 2020 WL 6999223, at *3 (W.D. Tenn. Jan. 2, 2020). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers—Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

Baptist's contention that the Panel's issuance of the Phase 2 Partial Final Award commenced the FAA's three-month challenge window is belied by a plain reading of the Arbitration Agreement. The parties made clear that bifurcation "of issues to be decided at the final hearing" was permitted "in order to promote efficiencies and resolution of the Dispute." (ECF No. 7-2, 177.) A plain reading of this provision indicates that the parties agreed on the possibility of bifurcating issues for the purpose of efficiency. To the extent that this provision speaks to whether Cigna was required to raise its challenge to the Phase 2 Partial Final Award within three-months of its issuance, the Court concludes that Cigna was not so required. The Court cannot extract from this provision a requirement that any party dissatisfied with the panel's partial decisions would be required to immediately challenge those decisions in parallel court proceedings as opposed to waiting until the final award issued.  Such an interpretation appears to be inconsistent with parties' stated intention of using bifurcation to efficiently resolve disputes.

Interpreting the remainder of the agreement's relevant provisions counsels in favor of the same result. For instance, the agreement also states that there would be a final hearing and final award, and that upon issuance of the final award either party may commence an action in federal court to confirm such award if the counterparty refused to honor it. (*Id.* at 177-78.) Once again, the plain terms of the agreement indicate that challenges to the arbitration award were intended to come after all issues were resolved. Given that the agreement provides that the bifurcation provision empowers the parties to bifurcate potentially "all issues to be decided at the final hearing," a requirement that the parties raise their challenges before the final award is issued would render these provisions superfluous because they would be barred from challenging anything in the final award. (*See id.* at 177.)

For these reasons, the Court does not find that the parties intended or agreed to commence the FAA's challenge limitation period via bifurcated partial final decisions. Consistent with that finding, the Court concludes that the parties agreed that the bifurcated partial final decisions were intended to be final for the purpose of applying these conclusions in subsequent hearings, but not for the purpose of setting forth a mandatory interlocutory review schedule.

### iii.    Finality and FAA Deadlines

Contract interpretation aside, it is not clear that the application of the "finality by express agreement" exception necessitates that the FAA's three-month challenge deadline immediately commence upon the date that partial final awards are issued. The First Circuit resisted this conclusion in *Hart Surgical, Inc.*[12] In effect, the First Circuit decoupled "finality" for the purposes of establishing jurisdiction to confirm or vacate an arbitral award from "finality" for the purposes of commencing the FAA's challenge period. Although the First Circuit appears to have rejected that conclusion in *Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 14 (1st Cir. 2023), this was dictum insofar as the court did not find that the parties intended to bifurcate proceedings. *Id.* Thus, in light of this Court's findings above, it is unnecessary to address this issue.

### iv.    Conclusions as to Finality and the FAA Deadlines

Baptist argues that Cigna cannot challenge the terms of the Phase 2 Partial Final Award via its Application (1) to Vacate July 11, 2023 Second Partial Final Award; and (2) to Vacate (in part) September 7, 2022 Partial Final Award (Case No. 23-2500) because it was not brought within three months of the Panel's issuance of the Phase 2 Partial Final Award. The Court disagrees. Because Cigna may raise its challenge to any of the Panel's rulings within three months of the yet-

---

[12] 244 F.3d at 236 ("Another important consideration is the risk that, in moving away from the concept of final judgments that prevails when review is sought of district court decisions, we may create situations at the arbitration level in which the losing side may forfeit an appeal (e.g., as to liability) by waiting until all arbitration proceedings are complete. One could imagine a rule that would allow the loser to seek review at once, but also retain the option of waiting until the completion of all phases at the arbitrator level.").

to-be-issued final award, they may challenge the Phase 2 Partial Final Award via the Case No. 23-2500 Application, or wait until the final award issues. This means that resolution of the issues concerning Cigna's removal of its initial petition are irrelevant insofar as Cigna can dismiss the initial vacatur action and proceed from the second vacatur action that was filed in this district court. Notwithstanding, the Court addresses Baptist's Motion to Remand.

### C. Procedural Defects in the Removal Process

### i. The Proper Party for Removal Purposes

Baptist's first remand argument is that Cigna could not remove the case because they were the "plaintiff" in that case for the purposes of removal. Generally speaking, only a defendant may remove an action to federal court. See 28 U.S.C. § 1441(a). However, that is not the end of the inquiry. Sometimes, the parties' position or orientation in the pleadings may be unclear or ill-defined. In such circumstances, courts must engage in a "functional test" that considers what the "mainspring of the proceedings are" to determine the true position of the parties, and whether a party is a "defendant" who can remove the action. *LGC Holdings, Inc. v. Julius Klein Diamonds, L.L.C.*, 238 F. Supp. 3d 452, 461-63 (S.D.N.Y. 2017) (quoting *Mason City & Ft. D.R. Co. v. Boynton*, 204 U.S. 570, 580 (1907). In *LGC*, a close factual analogue, the district court held that a party moving to vacate an adverse arbitration ruling was the functional plaintiff because "there was nothing pending in state court" until that party filed its petition to vacate. 238 F. Supp. 3d at 462. The district court explained that the party moving to vacate the arbitration award was "in control of the litigation; if it were to drop its demands, the case would [have been] at an end." *Id.* (internal quotation marks and citation omitted).

Here, the parties appear to agree that *LGC's* approach should apply, but dispute the outcome of that analysis. Baptist argues that the holding demonstrates that Cigna was the plaintiff with respect to the state court action because there was nothing pending in the state court until Cigna

brought its state court challenge to the Phase 2 Partial Final Award. (ECF No. 14, 18-19.) Cigna's

argument that *LGC* supports removal is as follows:

(1) Cigna commenced the state court action, but only challenged the Phase 2 Partial Final
Award;

(2) When Baptist filed its Counter-Petition in state court addressing both the Phase 2 and Phase
3 Partial Final Awards, there was nothing in state court for them to "counter" with respect
to the Phase 3 Partial Final Award;

(3) Because Baptist was the first party to bring legal claims related to the Phase 3 Partial Final
Award, it was in control of the litigation.

(ECF No. 30, 25.)

Application of the *LCG* rule yields the conclusion that Cigna is the functional plaintiff with

respect to the Phase 2 Partial Final Award. Based on Cigna's argument, they do not contest this

finding. They initiated the legal proceedings pertaining to the Phase 2 Partial Final Award, and but

for their demands that the state court vacate that award, the case would have been at an end. This

finding also forecloses Cigna's argument concerning their party orientation with respect to

Baptist's counter-petition concerning the Phase 3 Partial Final Award because a plaintiff is not

entitled to remove a suit based on their being subject to a counterclaim. *See Shamrock Oil & Gas

Corp. v. Sheets*, 313 U.S. 100, 106-08 (1941). Hence, Cigna is the functional plaintiff.

### ii.    Timeliness of the Removal

Baptist contends that Cigna's removal of the state court action was untimely. (ECF No. 14,

19.) Pursuant to 28 U.S.C. § 1446, a party has 30 days from service of the "initial pleading setting

forth the claim for relief upon which such action or proceeding is based" to remove to federal

court. A notice of removal may otherwise be filed within 30 days of the case becoming removable.

28 U.S.C. § 1446(a)(3).

Cigna commenced the state court action on December 6, 2022, and removed the case to this

Court on August 31, 2023. (ECF Nos 1 & 7.) It is undisputed that Cigna's removal is untimely if

the initial pleading is the reference point. However, Cigna contends that removal was timely

because it removed the case within 30 days of Baptist's filing of the counter-petition (ECF No. 30, 10 & 26.) In support, Cigna refers to a recent Sixth Circuit decision that the FAA's three-month challenge window begins to run upon entry of the "final" award that establishes both liability and damages. *Greenhouse Holdings*, 43 F.4th at 631. This argument does not address the removal timeliness issues that Baptist raises. Moreover, Cigna's claim that the timeline should be based on the day that Baptist filed its counter-petition appears to also be foreclosed by *Shamrock Oil & Gas Corp. See* 313 U.S. at 106-08. Cigna's removal was untimely.

### iii.    Waiver of the Right to Seek Remand

Cigna argues that Baptist waived their right to seek remand based on the two procedural defects described above by assenting to the Arbitration Agreement's forum-selection clause requiring that post-arbitral challenges be brought in federal court. (ECF No. 30, 17-18.) Under the removal statute, procedural requirements in the removal process are non-jurisdictional and are therefore waivable. *See Naji v. Lincoln*, 665 F. App'x 397, 402 (6th Cir. 2016); *see also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544-45 (5th Cir. 1991) ("the word 'procedural' in section 1447(c) refers to any defect that does not involve the inability of the federal district court to entertain the suit as a matter of its original subject matter jurisdiction."). One district court has held that the rule against allowing plaintiffs to remove cases to federal court is waivable. *See Gregerson v. Vilana Fin., Inc.*, 446 F. Supp. 2d 1053, 1058 (D. Minn. 2006). That ruling appears to properly interpret Section 1447(c)'s distinction between procedural and jurisdictional defects, as the mere fact that the wrong party removed the case has nothing to do with the Court's jurisdiction. Further, at least two district courts have held that forum-selection clauses may prospectively waive procedural defects in the removal process. *See Uboh v. United States Equestrian Found.*, 384 F. Supp. 3d 780,

19

783 (E.D. Ky. 2019) (denying motion to reconsider denial of motion to remand based on violation of the forum defendant rule because that rule is waived by a forum selection clause); *see also Maa v. Carnival Corp. & PLC*, No. CV 20-6341 DSF (SKX), 2020 WL 5633425, at *3 (C.D. Cal. Sept. 21, 2020) (holding that assent to a forum selection clause waives one's right to seek remand based on the bar to removing savings clause claims brought in state court).

In its reply, Baptist does not object to Cigna's argument that assent to a forum-selection clause could constitute waiver of one's right to seek remand based on procedural defects in the removal process, but argues that the forum-selection clause is of no significance here because Cigna cannot use it to create subject matter jurisdiction. (ECF No. 34, 1-2.) The Court agrees that the forum-selection clause cannot create subject matter jurisdiction where it does not exist. However, that is irrelevant in assessing the merits of Baptist's challenges to the purely procedural defects with Cigna's removal of this case.

Cigna argues that Baptist waived its right to seek remand based on procedural defects in the removal process through its assent to the forum-selection clause in the Arbitration Agreement. That point is well taken, and the Court therefore **DENIES** the motion to remand based on procedural defects in the removal process.

### D.  Cigna's Motion to Dismiss

Last is Cigna's Motion to Dismiss its own petition to vacate. In short, Cigna seeks to dismiss this case because its "prior related federal action" raising the same claims means that the filings in Case Number 23-cv-2500 are duplicative and unnecessary. (ECF No. 8-1, 4-5.) Although the Court appreciates this attempt at decluttering its docket, the voluminous briefings for this Motion make clear that it would be far more inconvenient for the Court to resolve this dispute than

it will be to parse through duplicative filings. The Court **DENIES** the Motion to Dismiss on practical grounds.

## IV.    CONCLUSION

Consistent with the foregoing, the Court **DENIES** Baptist's Motion to Remand based on lack of subject matter jurisdiction and procedural defects in the removal process, **DENIES** Cigna's Motion to Dismiss, and **DECLINES** all other related procedural challenges arising in either of the two consolidated cases. Given this case's history, the Court finds it necessary to inform the parties that this is an interlocutory order that does not address all issues submitted. The Court will take up the merits of Cigna and Baptist's post-arbitral petitions in a forthcoming order.

**IT IS SO ORDERED,** this 26th day of August, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE